No. 3054.—THIRD WARD SCHOOL DISTRICT OF NEW ORLEANS v. CITY BOARD OF SCHOOL DIRECTORS.   No. 3055.—VAN NORDEN, Treasurer, etc. v. THOMAS W. CONWAY, State Superintendent.   No. 3056.—THOMAS W. CONWAY, State Superintendent v. THE CITY BOARD OF SCHOOL DIRECTORS.   No. 3057.—VAN NORDEN, Treasurer, etc. v. THOMAS W. CONWAY, State Superintendent.

The assertion of a right to the same thing by another title and in a different capacity by the same parties, in a new suit, can not be construed as an acquiescence in the former judgment.   Therefore the appeal which has been taken from the first judgment will not be dismissed on motion, because the same parties have brought another suit for the same thing under another title and in a different capacity.

The act of the General Assembly, approved March 16, 1870, entitled "An Act to regulate public education in the State of Louisiana and city of New Orleans," etc., gives to the ward boards of school directors for the city of New Orleans, the primary control and direction of the public schools of the city.   The city board of school directors for the city of New Orleans, created by the same act, are subordinate in their powers and functions to those of the ward boards; they are not, therefore, authorized under this act to make contracts with teachers, receive or disburse the school funds belonging to or coming to the city for school purposes, the ward boards alone being vested with this power under the act.

APPEAL from the Eighth District Court, parish of Orleans.   *Dibble, J. Lacey & Butler*, for relators, appellants.   *E. Filleul*, for appellees.

ON THE MOTION TO DISMISS.

TALIAFERRO, J.   We are asked to dismiss the appeals in the above entitled causes, on the following allegations:

That the appellants have instituted a new suit in a different capacity and as substituted to the rights and powers of the ward school boards, in which they claim the same things which were the subject matter of

Third Ward School District of New Orleans v. City Board of School Directors.

the said four suits now pending on appeal, and that the said new suits and judicial demands are antagonistic and can not be reconciled with the intention of the said appellants to prosecute said appeal; and on further suggesting to the court that the said appellants have voluntarily executed and satisfied and acquiesced in the judgments appealed from by them.

We are at a loss to conceive how the appellants have "executed, ratified and acquiesced in the judgments appealed from by them," because they assert in a new suit a right to the same objects claimed in these cases by another title and "in a different capacity." There is nothing before us which we can take notice of to establish the facts alleged; but, if they were proved, they would not justify the conclusion that the appellants have acquiesced in the judgments, and there is nothing antagonistic with an intention to appeal.

The motion to dismiss is overruled.

### On the Merits.

This is a controversy between two sets of functionaries deriving their powers from the same source and holding their offices under the act of the Legislature approved March 16, 1870, entitled "An Act to regulate public education in the State of Louisiana and city of New Orleans, and to raise a revenue for that purpose." These contestants are styled "The City Board of School Directors," and "The Ward Boards of School Directors." The contest relates to priority of jurisdiction over the public schools of the city and the right to receive and disburse the school funds apportioned to the city schools. The four cases will all be considered together, as from their general tenor a decision of the question just named will be conclusive of all the issues presented in the four cases. They were in substance so determined by the judgment of the court below, which was in favor of the ward boards. The city board of school directors have appealed.

The first step in the investigation is to inquire, what are the powers and duties of these two orders of school directors; and, first, what is the scope of the powers and the extent of the functions of the city board of school directors?

We find in section fifty-four of the act before recited, that "the city board of school directors shall have all the powers and perform all the duties in reference to the public schools of the city and to the distribution of the school funds thereof, herein conferred upon the parish boards of school directors for other parishes."

What then are the powers and duties conferred upon the parish boards of school directors? They are detailed in section eighteen of the act, and are as follows:

*First*—To elect from among their number a president, secretary and

treasurer. The treasurer shall give bonds in an amount not less than five thousand dollars, to be approved by the Parish or District Judge and the Recorder of the parish, and a copy thereof to be forwarded to the Superintendent of Public Education, for the faithful performance of his duties under this act. Said bond may, from time to time, be increased by the order of the board or of the District Judge in proportion to the amount of school funds in the hands of the treasurer.

The board shall, from time to time, examine the accounts of the treasurer and settle them.

*Second*—To appoint for each ward school district in their parish a board of three district school directors. Said board of district school directors shall hold their office for two years from the time of their appointment and until their successors are duly elected or appointed and qualified.

*Third*—To visit and examine the schools of the several districts of the parish, from time to time, and to meet and advise with the several boards of district school directors as occasion may require.

*Fourth*—To report to the State Board of Education and to the Superintendent of Public Education all deficiencies in the schools or neglect of duty on the part of the teachers, directors, division superintendents or other officers.

*Fifth*—To receive from the State tax collector all proceeds of any parish school tax, levied by the police jury in accordance with this law, and to apportion the same among the several ward school districts of their parish in proportion to the number of persons in their district, between the ages of six and twenty-one years.

*Sixth*—To make such needful by-laws and regulations for their own government, not inconsistent with this law, as they may deem proper. The treasurer of the board shall receive all money on account of the board and pay out the same on warrants signed by the president and countersigned by the secretary, and he shall keep a correct account of all expenses and receipts in books provided for that purpose, which shall always be open for inspection. He shall render a monthly report to the board and an annual report to the division superintendent on or before the tenth day of January.

These then, are the powers and duties of the city board of directors. We next inquire what are the duties and powers of the ward board of directors? Section fifty-seven provides "that each ward board of school directors in the city of New Orleans, shall have the powers and duties and be governed by the regulations herein prescribed for district boards of school directors in other parishes." Here we are again referred to the powers and duties of another class of directors to know what are the powers and duties of the city ward school directors. We turn now to section twenty-two of the act. It

may be well in this place to premise that by the section twenty-two, each police jury ward of the country parishes, is declared to be a school district, and the term, "district board of school directors," is applied to the school directors of each police jury ward. The duties of this class or grade of directors are:

*First*—To make all contracts, purchases, payments and sales necessary to carry out any vote of the district; *provided*, that before erecting any schoolhouse they shall consult with the Superintendent of Public Education as to the most approved plan of such building.

*Second*—To admit pupils not belonging to the district, as provided for in section twenty-five of this act, to their schools on such terms as they may agree upon.

*Third*—To determine the number of schools which shall be established and the length of time each shall be taught, subject to the provisions of section twenty-three of this act.

*Fourth*—To fix the site of each schoolhouse, taking into consideration the wants and necessities of the people of each portion of the district.

*Fifth*—To establish graded or union schools whenever they may be necessary; and they may, as occasion requires, select a person who shall have the general supervision of the schools in their districts, subject to rules and regulations of the board.

*Sixth*—To determine what branches shall be taught in the schools of their districts.

*Seventh*—To require the secretary and treasurer each to give bond to the district in such penalty and with such sureties as they may determine upon, conditioned for the faithful performance of their duties under this act. The bond shall be filed with the president of the board, and a copy of the same shall be sent to the Superintendent of Public Education, and in case of breach of condition thereof he shall bring suit thereon in the name of the district.

*Eighth*—They shall, from time to time, examine the accounts of the treasurer and make settlements with him and present at each regular meeting of the board a full statement of the receipts and expenditures of the district and all matters delegated to them to perform and all such other matters as may be deemed important.

*Ninth*—To visit the schools in their district, and aid the teachers in establishing and enforcing rules for the government of the schools, and see that they keep a correct list of the pupils, embracing the time during which they attend school, the branches taught and such other matters as may be required by the division superintendent. A majority of the board shall be a quorum to transact business, but a less number may adjourn from time to time. Each district board shall adopt a uniform series of books for all the schools in their district, and such series shall not be changed oftener than once in two years.

Then follow in section twenty-three, the duties prescribed for the officers of these district boards: "The president shall preside in all meetings of the board and of the district; shall draw all drafts on the State Treasurer and upon the treasurer of the parish board for money apportioned to his district; sign all orders on the district treasury, specifying in the order the fund on which they are drawn and the use for which the money is assigned, and he shall sign all contracts. The president shall appear in behalf of his district in all suits brought by or against the same, but, when he is individually a party, this duty shall be performed by the secretary." Next come the various duties of the secretaries, but these it is not necessary for our purpose to bring into view. "The treasurer," it is declared, "shall hold all moneys belonging to the district and pay out the same on the order of the president countersigned by the secretary. He shall receive all money apportioned to the district by the Superintendent of Public Education."

Each parish board of school directors is constituted a body corporate and politic in law, with powers to sue and be sued. The body, it is declared, shall be known and styled "The Board of School Directors for the parish of," etc. In like manner the district board of school directors in the sub-divisions of the parish, that is, in the police jury wards, are each named "Ward District of ———, in the parish of ———, and State of Louisiana." So also each ward board in the city of New Orleans is constituted a body corporate and politic. The city board of school directors, having all the powers of the parish boards may, perhaps, be considered a body corporate, but corporate powers are not conferred upon it in express terms.

We have now in juxta position the several enactments of the Legislature which establish the powers and duties of the litigating parties before the court. With the single exception of sections 61 and 62, to which the order of our investigation will soon bring us, all the enactments are mainly embraced by sections 54 and 57, together with the references therein made, and which we have already referred to.

Before proceeding further, we will take a general retrospect of these enactments. In doing so, we find that the powers given to the city board of directors are few and of a limited character. It appoints for each ward school district three district directors. It is to visit the schools, and to meet and advise with the several boards of ward directors as occasion may require; to report to the State Board of Education and to the Superintendent of Public Education all deficiencies in the schools or neglect of duty on the part of teachers, directors, division superintendents or other officers; to make suitable by-laws for their own government, and to receive from the State tax collector all proceeds of any parish school tax levied by the police jury, and to

apportion the same among the several wards in proportion to the number of persons in each ward between the ages of six and twenty-one years. The character of these grants of power seems to be chiefly supervisory. It would appear that the purpose of the board is more to see that others discharge faithfully the active and important duties required in the administration of the public schools than to participate in those duties itself. When we review the powers and duties conferred upon the ward boards, on the other hand, we see that all the numerous powers and essential duties, necessary to the efficient and practical working of the public school system, are conferred upon them. They are constituted corporate bodies, with ample powers, many, but not all, of which we have previously, in this opinion, reviewed. We shall recur now only to one of these powers or rights, and the one, probably, which constitutes the principal bone of contention, namely, the right to receive and disburse the fifty thousand dollars of State school funds. It is plain that this right is given to the ward boards. To the ward boards *all* the school funds, both State and parochial, go, being apportioned in the one case by the State Superintendent and in the other by the city board of school directors. In any view of these various powers that we can take, the odds seem greatly in favor of the ward boards; indeed, if we remember rightly, the able counsel of the city intimated, on the argument of the case, that if sections 54 and 57 alone were to prevail, the case was against him. He relies upon articles 61 and 62 of the act, taken in connexion with the preceding ones, and aims to harmonize the different sections on the basis of a paramount control of the public schools of New Orleans being given to the city board of school directors by the sections 61 and 62. These sections read thus:

"Section 61. That the control and direction of all public schools within said city, which are supported from public school moneys, whether such moneys are derived from municipal or State taxation, is hereby vested in the board of school directors for the city of New Orleans that shall be appointed under this act, and all laws or parts of laws by which the Common Council of New Orleans is empowered to elect a board of directors of the public schools and by which any control over any of the schools named above is given to said board of directors appointed or elected by the Common Council of New Orleans, and the special act of the General Assembly approved March 14, 1855, entitled 'An Act relative to public schools in the city of New Orleans,' be and the same is hereby repealed."

. Taking this section in its entirety, it would seem to explain its purpose to be rather to bring into the new school system an exclusiveness of control over the subject, and to cut off all pretensions that might arise on the part of the City Council to organize public schools, or to

continue such schools as may have been established by previously existing laws, than to confer upon the city board of directors the supremacy that is contended for. And this view, we think, is favored by attending to the provisions of the next section, No. 62, which likewise seem intended to secure, under the new system, the exclusive jurisdiction over the public schools of the city, but not wholly to the city board of school directors. The section 62 is in these words:

"That the sole and exclusive control and regulation of all public schools within the city of New Orleans, whether supported by municipal or State taxation, is hereby vested in the board of school directors for the city of New Orleans and the other subordinate and local boards appointed in said city in accordance with the provisions of this act; and that the offices of all school directors in said city, appointed or elected or assuming to act, are hereby terminated and made to cease, and all the powers hitherto conferred upon such school directors, by virtue of any law or of any ordinance of said city, are hereby abolished and annulled."

We do not understand the language used in this section to express or imply that the ward boards are subordinate to the city board of school directors. The "sole and exclusive control" is conferred upon the "city board of school directors" *and the other subordinate* and local boards, clearly meaning that the "city board of directors" is itself a subordinate board, all the local boards, of which the city board is one, being subordinate to the State Board and to the State Superintendent. The term "local boards" is used in contradistinction to the general or State Board. By section 5 of the act, the State Board is vested with power "to make all needful rules and regulations for the government of the public schools throughout the State, subject to the provisions of this act." By section 21, the city board is to report to the State Board and to the State Superintendent. The city board is the creature of the State Board. Section 16.

The ward boards are required to report to the division superintendents and are subject to the control of the State Board and the State Superintendent. Sections 23, 25, 27.

Taking the context of section 62, and in connection with the preceding section, there can be no doubt that its meaning is, that the subordinate and local boards, viz, the city board of school directors and the ward boards shall have sole and exclusive control and regulation of the public schools within the city *as against* the apprehended antagonistic authority over the subject that might be set up by the City Council.

The provisions of sections 61 and 62 are expressed in general terms. By an established rule of construction, a general provision does not repeal a particular one by implication. 3 Martin, 672, and authorities there cited; 14 An. 113; Civil Code, article 23.

Considering the entire scope of the act, we conclude that it was not the intention of the law-makers to supersede the functions of the ward boards, by vesting in the city board of directors the numerous powers and duties conferred upon the former, nor to give to the city board of directors even a concurrent, and much less a paramount jurisdiction over the various subjects assigned to the ward boards.

It is therefore ordered, adjudged and decreed that the judgments rendered in these several cases by the district court be respectively affirmed, with costs.

———

LUDELING, C. J., *dissenting*. In all these cases the question presented for decision is, which of two corporations, the city board of school directors or the ward school districts of the city of New Orleans, created by the same statute of the General Assembly, has the paramount power over the public schools in the city of New Orleans and the moneys appropriated for their maintenance ?

The appellees contend that section fifty-seven gives the primary and exclusive control to the ward school districts of the city of New Orleans, and that section fifty-four limits the powers of the city board of school directors to such powers as are conferred by the law in parish boards.

If these two sections alone conferred powers on the two corporations and the construction placed upon them by the appellees were correct, there would be little room to doubt as to the powers of each board. But sections fifty-four and fifty-seven are susceptible of a different interpretation, and they are not the only sections of the law bearing on the subject of the powers or rights of the two boards.

Section fifty-four provides "that in the city of New Orleans there shall be a board of school directors of eleven members, who shall hold their offices for two years and until their successors are duly elected or appointed or qualified." It provides how the members of the board shall be appointed and declares that "said board shall have all the powers and perform all the duties in reference to public schools of the city and to the distribution of the school funds thereof herein conferred upon parish boards of school directors for other parishes. Said board shall hold its first meeting within thirty days after its appointment, shall choose a president and treasurer from its own members and shall proceed to appoint, for each ward of the city of New Orleans, a ward board of school directors of five persons."

The clause, " shall have all the powers and perform all the duties in reference to the public schools of the city herein conferred on parish boards for other parishes," does not, in my opinion, necessarily circumscribe the powers and duties of the city board to those appertain-

ing to the parish board. It embraces those powers and duties, but does not exclude others, for it expressly confers the right to distribute the school funds of the city. Section fifty-four does not limit the powers of the city board, nor is the grant of powers therein made exclusive of others.

Section fifty-seven declares that "each ward board of school directors in the city of New Orleans shall have the powers and duties and be governed by the regulations herein prescribed for district boards of school directors in other parishes."

Section twenty-two defines the powers and duties of the directors or district board of school directors.

Section twenty-three defines the duties of district officers.

If the powers and duties granted by section fifty-seven be those only which are enumerated under section twenty-two as those granted to the board in contradistinction to the powers granted to district officers under section twenty-three—a distinction made by the statute itself— there is no antagonism between section fifty-seven and sections sixty-one and sixty-two and seventeen. But, if under section fifty-seven it was intended to give to the ward boards the primary control of the schools in the city, then there would be a palpable antinomy. For sections seventeen, sixty-one and sixty-two vest the right to control and direct all the public schools, within the limits of the city of New Orleans, in the city board of school directors, while fifty-seven would give the same powers to the ward school districts.

It is the duty of courts to give effect to every part of a law, if it be possible to do so. I understand the rule laid down in Bacon's Abridgment, referred to, to mean no more. "If a particular thing be given or limited in a preceding part of a statute, this shall not be altered or taken away by subsequent general words of the same statute." Judge Martin relied upon this rule to maintain a principle announced by the court, "that a general provision does not repeal a particular one by implication." 3 Martin 672.

It is not correct to say that sections sixty-one and sixty-two contain general provisions, because they confer absolute power over the administration of the public schools in New Orleans. They contain specific grants of power, the right to control and direct the public schools.

Article seventeen of the Civil Code declares that "laws upon the same subject matter must be construed with reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another." Thus, what is clear in this statute may be called in aid to explain what is ambiguous. And article eighteen of the Civil Code directs that, "if the language be ambiguous, we must endeavor to discover the true meaning by considering the spirit and

reason of it." Guided by these rules we may harmonize all the sections of the law. We have already seen that section fifty-four conferred certain rights and imposed certain duties on the city board, but without restricting its powers to those granted in that section.

Section sixty-one gives the control and direction of the public schools in the city of New Orleans to the city board. This section is unambiguous. Control is the synonym of command. Direction is synonymous with control, command. Mr. Webster says: "These words, as here compared, have reference to the exercise of power over the actions of others. Control is negative, denoting power to restrain; command is positive, implying a right to enforce obedience; directions are commands containing instructions how to act. A shipmaster has command of his vessel; he gives directions to the seamen as to the mode of sailing it and exercises a due control over the conduct of the passengers."

The word control is used in sections seventeen, sixty-one and sixty-two in the same sense. In all these sections it means the primary right to govern, or the power to administer the affairs of the public schools. This is manifest from section seventeen. It declares "that the board appointed for the town of Algiers shall control the public schools in the parish of Orleans, not within the city of New Orleans." And it declares further, that, "should any part of said territory be hereafter incorporated within the city of New Orleans, said board shall have control over all territory remaining out of the limits, and the board for the city of New Orleans shall control all schools within the limits of the city of New Orleans." Here it is perfectly clear that the permanent power to administer the affairs of the public schools in the Fifth and Sixth Districts of New Orleans is conferred upon the city board.

To suppose that the General Assembly intended, by sections fifty-four and fifty-seven, to bestow on the ward boards the primary control of the schools in New Orleans in the First, Second, Third and Fourth Districts, when the power had been confirmed on the city board as to the Fifth and Sixth Districts, is to conclude that the law makers intended that the public schools in New Orleans, in different localities, should be subject to two different systems of administration, a policy fraught with evils, and a policy totally at variance with that manifested in section thirty-five in regard to other cities and towns throughout the State.

The jurisdiction of the ward boards is local; they can not establish high schools; and unless the city board have other powers than those given to the parish boards, it can not establish, maintain or govern them; and the most valuable and cherished feature of the public school system of New Orleans will be destroyed. "The letter killeth,

21

but the spirit giveth life." I feel authorized in saying that the General Assembly intended to give, and that they did expressly give primary control over the public schools of New Orleans to the city board of school directors. This construction harmonizes every part of an otherwise incongruous law. I therefore dissent from the opinion of the majority in this case.